UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

CURTIS L. WYSE,

    Plaintiff,

v.                                                                  Case No.:   2:23-cv-1083-KCD

CALOOSA RIVER, INC.,

    Defendant.
_____/

## ORDER

Plaintiff Custis Wyse is deaf. (Doc. 1 ¶ 1.)[1] In February 2022, he tried to rent a boat from Defendant Caloosa River, Inc. But he never saw the water. According to Wyse, Caloosa River refused the rental because of his disability. (*See* Doc. 1; Trial Tr. 55:12-25.)

Caloosa River disputes this allegation. Its owner, David Close, claims he struggled to communicate with Wyse during the rental process. He tried to bridge the gap by speaking louder, but Wyse only became agitated. (Trial Tr. 137:9-17.) He also tried to find a solution that would let Wyse rent a boat and satisfy Caloosa River's safety protocols, but Wyse's companions were unwilling

---

[1] Unless otherwise indicated, all internal quotation marks, citations, and alterations have been omitted in this and later citations.

to help. (*Id.* at 142:8-25, 143:1-144:12.) In the end, Caloosa River paints this dispute as a communication failure. (*Id.* at 137:9-17.)

Wyse sued Caloosa River under Title III of the Americans with Disabilities Act. (Doc. 1 ¶ 9.) "Title III provides that [n]o individual shall be discriminated against on the basis of disability in any place of public accommodation." *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1326 (11th Cir. 2013). The complaint seeks injunctive relief and attorneys' fees. (Doc. 1 ¶¶ 27, 28.) Wyse did not ask for damages.

No dispositive motions were filed, and so the case proceeded to a bench trial. (Doc. 52.) At the outset, Caloosa River raised "a factual challenge to [Wyse's] standing" to sue. (Trial Tr. 8:8-11.) The Court reserved ruling on the jurisdictional issue and took evidence from both parties on the merits. Having reviewed the record and considered the arguments presented, the Court finds that Wyse lacks standing. The case is therefore dismissed.

## I. Legal Standard

"Standing is a threshold jurisdictional question of whether a court may consider the merits of a dispute." *Nunnelee v. United States*, 573 F. App'x 886, 886 (11th Cir. 2014). "The party invoking federal jurisdiction bears the burden of establishing" standing. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). It has three requirements: "(1) injury-in-fact; (2) a causal connection between the asserted injury-in-fact and the challenged action of the defendant; and (3)

2

that the injury will be redressed by a favorable decision." *Houston*, 733 F.3d at 1328.

Only one requirement is in dispute: whether Wyse suffered an injury-in-fact. (Trial Tr. 11:10-24; Doc. 54 at 5.) To meet this element, a plaintiff must provide "[p]roof of past discrimination in violation of the ADA[.]" *Barberi v. Luisi Dollar Disc. Mini Mkt., Inc.*, No. 17-20522-CIV, 2017 WL 2651710, at *2 (S.D. Fla. June 19, 2017). And where only injunctive relief is sought, as here, they must also show "a sufficient likelihood that [they] will be affected by the allegedly unlawful conduct in the future." *Houston*, 733 F.3d at 1328. This requires a demonstration of "real and immediate—as opposed to a merely conjectural or hypothetical—threat of future injury[.]" *Price v. City of Ocala, Fla.*, 375 F. Supp. 3d 1264, 1268 (M.D. Fla. 2019).

Caloosa River focuses on the latter requirement, arguing Wyse has not shown "a real and immediate threat of future injury." (Doc. 54.) "In considering the future injury element of standing in Title III cases," a court considers: "(1) the proximity of the defendant's business to the plaintiff's residence; (2) the plaintiff's past patronage of the defendant's business; (3) the definiteness of the plaintiff's plan to return [to the non-compliant establishment]; and (4) the frequency of the plaintiff's travel near the defendant's business." *Price*, 375 F. Supp. 3d at 1269-70; *Gomez v. Dade Cnty. Fed. Credit Union*, 610 F. App'x 859, 863 (11th Cir. 2015). These factors "are not exclusive, and no factor is

3

dispositive." *Price v. Escalante - Black Diamond Golf Club LLC*, No. 5:19-CV-22-OC-30PRL, 2019 WL 1905865, at *4 (M.D. Fla. Apr. 29, 2019).

When a defendant raises a factual challenge to standing, a court may consider evidence outside the pleadings. *Houston*, 733 F.3d at 1336. "In so doing, [the] court is free to weigh the facts and is not constrained to view them in the light most favorable to the plaintiff." *Id.*

## II. Discussion

Starting with the first factor—the proximity of the defendant's business to the plaintiff's residence—Wyse does not live near Caloosa River. He is a resident of Petersburg, Michigan. (Trial Tr. 13:15-16.) And he does not own or rent property in Florida. (*Id.* at 30:25-31:3.) There are more than a thousand miles between Wyse's residence and Caloosa River's business. Courts have routinely found much shorter distances are not close in proximity. *Kennedy v. Solano*, 735 F. App'x 653, 655 (11th Cir. 2018) ("[Plaintiff] lives 170 miles from the Sunset Café, which is not a close proximity."); *Cohan v. Major Universal Lodging, LLC*, No. 6:23-CV-2404-WWB-DCI, 2024 WL 2892946, at *3 (M.D. Fla. June 10, 2024) (188 miles not close proximity); *Brito v. Southlan Plaza Inc.*, No. 6:18-CV-629-ORL-41-TBS, 2018 WL 11476514, at *3 (M.D. Fla. July 9, 2018) (227 miles not close proximity).

Wyse fairs no better under the second factor—the plaintiff's past patronage of the defendant's business. He has only visited Caloosa River once.

4

(Trial Tr. 29:2-5, 31:7-11, 60:1-7.) Thus, the second factor necessarily weighs in Caloosa River's favor. *See Kennedy*, 735 F. App'x at 655.

The third factor—the definiteness of the plaintiff's plan to return—presents a tougher question. Wyse testified that he would rent a boat from Caloosa River if the Court granted him injunctive relief. (Trial Tr. 29:12-15, 63:20-23.) A plaintiff's allegation they will return to the non-compliant business can sometimes be "sufficient to demonstrate standing for injunctive relief under Title III." *Seco v. NCL (Bahamas), Ltd.*, 588 F. App'x 863, 866 (11th Cir. 2014); *Stevens v. Premier Cruises, Inc.*, 215 F.3d 1237, 1239 (11th Cir. 2000). But other times it's not. *See, e.g.*, *Access for Am., Inc. v. Associated Out-Door Clubs, Inc.*, 188 F. App'x 818 (11th Cir. 2006). Ultimately, "[d]istrict courts must consider the totality of all relevant facts to determine whether a plaintiff faces a real and immediate threat of future injury." *Kennedy v. Schling LLC*, No. 6:17-CV-74-ORL-22TBS, 2017 WL 6597119, at *5 (M.D. Fla. Nov. 14, 2017).

Because this case involves a factual challenge to standing, the entire record must be weighed, including the credibility of Wyse's claim. *See Bischoff v. Osceola Cnty., Fla.*, 222 F.3d 874, 881-82 (11th Cir. 2000); *Raetano v. Richard E. Avichouser Revocable Living Tr.*, No. 8:07-CV-2009-T-23MSS, 2007 WL 4336184, at *1 n1. (M.D. Fla. Dec. 7, 2007). Having reviewed Wyse's

testimony along with the other evidence, the Court is not convinced he plans to return to Caloosa River. Consider this excerpt from his testimony:

> Q. Do you intend to rent a boat the next time you're in this area?
>
> A. Like to, yes.
>
> Q. Okay. Since the incident, have you sought to rent a boat from the defendant?
>
> A. Since the incident I try to rent the boat from the defendant? No, I have not tried yet.
>
> Q. Okay. Is that because he previously wouldn't rent a boat to you?
>
> A. With court pending -- and the second year was more like a family Christmas. That was in December and January. And just recently, in February, we had a cruise planned, so...
>
> Q. If the Court finds that the defendant should be ordered to rent boats to you, would you rent a boat from the defendant?
>
> A. Yes, I would.

(Trial Tr. 28:24-29:15.) Wyse only testified that he would return to Caloosa River in response to leading questions from his attorney. Before that, Wyse hedged his answer: he would "like to" rent a boat from someone when he is next in southwest Florida. And despite his professed desire to see dolphins, manatees, and a "different environment," Wyse did not rent a boat on any of his other trips to Florida. (*Id.* at 39:25, 40:1-6, 44:1-11; 63:5-23.) Wyse's lack of interest in renting a boat is further highlighted by his having *never* tried to rent a boat apart from this incident. (*Id.* at 60:1-7.)

6

The testimony of Wyse's companions on the failed boat trip, April and Tom Hanus, only adds to the uncertainty of his plans. When asked about next February (the timeframe Wyse said he would be visiting this area) April testified that Wyse "did say something like, *maybe* we could . . . [g]o on the boat – [though] *we have nothing planned* at this exact moment, but we will try to do something. *We're trying to think of something* in February." (Trial Tr. 84:20-85:2, 100:1-8 (emphasis added).) April also confirmed there are no concrete plans:

> Q. But there's nothing specifically planned as we sit here right now?
>
> A. I mean, we talked about already, should we do a cruise next February? What are we going to do? So we're going to start talking about that probably in the next month or so of coming back to Florida.
>
> Q. Nothing concrete?
>
> A. *Nothing concrete. It's too early*.

(*Id.* at 84:20-85:2 (emphasis added).) Tom Hanus offered similar testimony:

> Q. You were in the courtroom when Mr. Wyse testified that as far as next February, February of 2025, he might come to your condo but there were no definite plans?
>
> […]
>
> A. We are coming down in February, as we always do. They are welcome to come down. We have talked in the past about them coming down. *But there are no basic plans, no dates set, because it's too far out to get an airplane ticket anyway right now. So, yes, in the summer, we'll discuss it*.

(*Id.* at 109:12-110:3 (emphasis added).) Considering this evidence, Wyse's professed desire to travel more than a thousand miles to rent a boat from

7

Caloosa River rings insincere. As things stand, Wyse "would like to plan to come back" to southwest Florida next February. (*Id.* at 28:7-9, 84:20-85:2, 109:23-110:3.) But he has "no basic plans." And on the trip, Wyse *might* rent a boat or go on a cruise. (*Id.* at 84:20-85:2, 100:1-8, 109:23-110:3.)

The Eleventh Circuit confronted similar facts in *Kennedy v. Solano*, where the plaintiff claimed that "she intend[ed] to return to the [non-compliant business] in the future when it is ADA compliant." 735 F. App'x at 655. Those musings, the Eleventh Circuit concluded, did not show a concrete plan to return. *Id.* Wyse says he will visit Caloosa River if the Court rules in his favor. But like the plaintiff in *Kennedy*, Wyse has no plan to return. While he need not provide specific travel plans or proof of a reservation, he must offer something more than a professed desire to "maybe" rent a boat from Caloosa River. *Rosenkrantz v. Markopoulos*, 254 F. Supp. 2d 1250, 1253 (M.D. Fla. 2003). Because Wyse only muses about what he might like to do someday, this factor also weighs in Caloosa River's favor.

Turning to the fourth factor— the frequency of the plaintiff's travel near the defendant's business—Wyse testified that he "always like[s] to come [to southwest Florida,] in February," and "like[s] to stay three weeks and visit a variety of families and friends." (Trial Tr. 14:8-10, 28:20-21.) But apart from attending trial, Wyse has made only four trips to Florida, one of which was

8

twenty years ago. (*Id.* at 32:17-19, 33:3-4, 34:1.) Additionally, his trips are not concentrated in the area around Caloosa River.

No matter if Wyse exaggerated his travel to southwest Florida, even considering his trips in total, they are far from frequent. "[T]he term annual is not synonymous with frequent and does not support a finding that the threat of injury is actual or imminent." *Access for the Disabled, Inc. v. Rosof*, No. 8:05-CV-1413-T30-TBM, 2005 WL 3556046, at *2 n.3 (M.D. Fla. Dec. 28, 2005). The reasoning in *Rosof* is persuasive. Frequency implies regularity and commonness. Trips to work, local restaurants, and the grocery store are frequent events. The same cannot be said for annual events like birthdays, holidays, and trips to visit a distant place. Those events are neither regular nor common. *Id.* Because Wyse's annual travel to southwest Florida is too irregular to be considered frequent, this factor likewise favors Caloosa River.

### III. Conclusion

Wyse bore the burden of proving standing. But he established none of the required factors. Considering the totality of the circumstances, the Court does not believe Wyse faces "a real and immediate threat of future injury." *Houston*, 733 F.3d at 1329. "Absent standing, [his] claims cannot continue." *Longhini v. J.U.T.A., Inc.*, No. 6:17-CV-987-ORL-40-KRS, 2018 WL 1305909, at *4 (M.D. Fla. Mar. 13, 2018). Accordingly, Wyse's Complaint (Doc. 1) is **dismissed without prejudice**. *See Wiand v. ATC Brokers Ltd.*, 96 F.4th

9

1303, 1311 (11th Cir. 2024) ("[A]bsent standing, a court must dismiss the plaintiff's claim without prejudice."). **The clerk is directed to terminate all deadlines and close this case**.

**ORDERED** in Fort Myers, Florida on July 26, 2024.

Kyle C. Dudek
United States Magistrate Judge

Copies:  All Parties of Record